Elizabeth M. **JOHNSON**, Plaintiff,

v.

Henry **FRANKLIN** and United States of America, Defendants.

Peter J. **COLL** and Mrs. Ida B. Coll, Plaintiffs,

v.

The **UNITED STATES** of America, and Chauncey Everett Murch, Defendants.

Civ. A. Nos. 881 (Brunswick Division), 2581 (Savannah Division).

United States District Court, S. D. Georgia.

May 12, 1970.

Anthony A. Alaimo, Brunswick, Ga., for plaintiff Elizabeth M. Johnson.

Chris B. Conyers, Brunswick, Ga., for defendant Henry Franklin.

R. Jackson B. Smith, Jr., U. S. Atty., Augusta, Ga., Richard C. Chadwick, Asst. U. S. Atty., Savannah, Ga., for the United States.

Frank W. Seiler, Savannah, Ga., for plaintiffs Peter J. and Mrs. Ida B. Coll.

Edward T. Brennan, Savannah, Ga., for defendant Chauncey Murch.

## OPINION AND ORDERS

LAWRENCE, Chief Judge.

These two Federal Tort Claim cases present striking factual similarities. In each instance a member of the armed services was involved in an automobile collision while driving his own car enroute to the new post of duty to which he had been assigned. In each instance the soldier and the sailor who were concerned had been given leave time and had spent a portion thereof at his "leave address," a considerable distance off the direct route to the assigned post of duty. At the time of the accidents the two members of the armed forces who are involved had both reached a point not considerably distant from their respective destinations.

The United States has filed motions for summary judgment on the ground that its "employee" was not acting "within the scope of his office or employment" or "in line of duty." 28 U.S.C. §§ 1346(b), 2674, 2671.

The facts in the two cases are outlined below.

### Henry Franklin

On December 28, 1966, a transfer order was issued directing AF2 Franklin, United States Navy, to report to a new post of duty at Jacksonville, Florida, by midnight, February 8, 1967. He had previously been stationed at Moffett Field in California. Franklin left there on January 10th and drove in his own automobile to Ashland, Kentucky. He designated his parents' residence there as his "leave address." Franklin was given fifteen days leave period, nine days travel time and four days proceed time before reporting to the Naval Air Technical Training Center at Jacksonville. He left Kentucky where he had stayed with his parents during part of his leave on January 23rd. His purpose in arriving at Jacksonville prior to the latest reporting date was to locate living quarters for his family. At Woodbine, Georgia, some forty-five or fifty miles short of his destination, his car was involved in a collision. This occurred on the same day that he had left Ashland. Franklin was sued in the Superior Court of Camden County. The case was removed to the Brunswick Division of the District Court and, subsequently, plaintiff joined the United States as a party defendant.

The Government has moved for summary judgment on the ground that the negligent acts complained of were not performed by Franklin in the scope of his employment or in line of duty. Franklin also seeks a summary judgment, contending that he is not subject to suit since he was engaged in his duties with the Navy at the time of the collision.

### Chauncey Everett Murch

In November, 1966, while serving in Viet Nam, Technical Sergeant Murch received orders to report to Shaw Air Force Base at Sumter, South Carolina. He was to sign in not less than 40 days after his departure from his port of entry in the United States. Murch arrived at San Francisco on January 6, 1967. He flew by commercial airline at his own expense to Atlanta where he was met by his wife. They then drove in his car to Americus, Georgia. The residence of Mrs. Murch's parents was designated on his travel order as his "leave address." The travel time allotted to reach Shaw Air Force Base was ten days. Murch was given thirty days delay enroute. He was reimbursed by the Air Force at six cents per mile for travel expense directly from San Francisco to Sumter (2,761 miles). While spending his leave at Americus, Sergeant Murch and his wife drove to Shaw Field (328 miles) to look for housing accommodations. After arranging to buy a house, they returned to Americus by way of Atlanta where they had left one of their children. This was on January 13th–14th, 1967. He seems to have made another trip to Sumter for personal reasons on February 2nd–4th.

On February 9th Murch and his family packed up and left Americus by automobile. His forty-day period of leave and travel time would expire on February 13th and he says that he planned to report for duty on the afternoon of February 10th. The furniture was to arrive that day and he was anxious to be present. It was his intention to sign in after the purchase of the house was "squared away."

On the afternoon of February 9th about 9 miles north of Sylvania, Georgia, the Murch car was involved in a collision on U. S. Highway 301. This occurred approximately 100 miles from Shaw Air Force Base. Expenses of the three automobile trips to Sumter were paid for by Sergeant Murch. He was entitled to use his own motor vehicle as the means of transportation to the place where he was to report.

Such are the facts of the two cases as set forth in the affidavits and in the various documents accompanying the respective motions for summary judgment.

■ Under the Federal Tort Claims Act, the United States is liable for injuries caused by the negligent act of an employee while acting within the scope

of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred, 28 U.S.C. § 1346(b). Acting in the scope of employment is statutorily defined, in relation to military or naval personnel, as "acting in line of duty." 28 U.S.C. § 2671. The latter words go no further than to invoke the state law of *respondeat superior* in respect to torts arising out of the wrongful acts of such personnel. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761.

Under the law of this State "Every person shall be liable for torts committed by * * * his servant * * * in the prosecution and within the scope of his business * * *." Georgia Code § 105–108. If the Georgia law governing *respondeat superior* as applied to a private individual or corporation contemplates that Franklin and Murch were in the course of their employment at the time of the accidents, the United States is liable in tort. It is just that simple. Except that it is not simple at all. It is extremely difficult and complicated. To begin with, the courts of Georgia have not and probably will never be confronted with an identical or even closely analogous set of facts. Soldiers and sailors, to use a Latin term, represent a *sui generis* type of employment and military or naval personnel are hardly comparable to persons in private employ.

In O'Brien v. United States, D.C., 236 F.Supp. 792, Judge Gignoux has pointed up some of the factors which illustrate the unique control the military service possesses over its personnel. He said:

"Kisor's orders and the regulations referred to therein leave no doubt that he remained at all times accountable to the Air Force for all of his actions, including the driving of his private automobile. Whether Kisor was on travel or leave status, the Air Force had to be able to reach him through the address shown in his orders; he might be ordered to temporary duty at any time; and he was required at all times to conform to 'standards of conduct, appearance, and safety expected of members of the Air Force.' He was, moreover, subject to the Uniform Code of Military Justice, 10 U.S. C. § 911, which provides, 'Any person subject to this chapter who operates any vehicle while drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct.' In sum, even though the Air Force may have been, as the Government urges, wholly indifferent to the route or mode of travel selected, there can be no question of its power and right to control all of Kisor's actions, including his driving activities, if it so desired."

To this I will add that the Air Force Manual (35–22, Dec. 16, 1964) states the following policy in respect to leaves:

"Leave of absence, authorized in Section 701, Title 10, USC, is intended to afford periods of cessation from routine duty, for travel, and for healthful recreation and diversion vitally essential to the well-being, morale, and efficiency of military personnel. Members are encouraged to use their accrued leave to avoid accumulating or losing leave at the end of the fiscal year."

Hinson v. United States, 5 Cir., 257 F.2d 178 is a leading case on the subject. It concerned application of Georgia law to an automobile collision in which an army medical doctor was involved. He was driving his own car from his home in Virginia under orders to report for active duty at Fort Sam Houston. At the time of the accident he had reached a point in Bibb County, Georgia, directly on the line of his travel route to Texas. There as here the Government urged that the Army was completely indifferent to the route or mode of travel of the officer and that he used his own automobile entirely for his own convenience and benefit. It contended that the sole concern of the Army was that the officer report for duty by the time specified in his orders. The Fifth Circuit

Court of Appeals thus summed up the issue: "The battle lines here drawn on scope of employment separate the camps into the question in its simplest most graphic form: was Capt. Westcott 'going to work' or was he then already 'at work' in making his way to Texas?"

Reversing the District Court which had granted the Government's motion for summary judgment, the Court of Appeals answered the question posed unfavorably to the United States. It said: "Once it is seen that this trip was made in compliance with orders which left only immaterial choices to the employee, it is clear, under the Georgia law, that Capt. Westcott was acting within the scope of his employment." [1]

 The cases decided in this State since *Hinson* do not change the rules announced in the Georgia decisions cited by the Court in that case. See Dettmering v. United States, 308 F.Supp. 1185 (D.C.Ga.1969); Corum v. Edwards-Warren Tire Co., 110 Ga.App. 33, 137 S.E.2d 738; Sparks v. Buffalo Cab Co., 113 Ga.App. 528, 148 S.E.2d 919; Marketing Sales Industries of Georgia, Inc. v. Roberts, 118 Ga.App. 718, 165 S.E.2d 319; Harnage v. Hall, 120 Ga.App. 12, 169 S.E.2d 345. Under Georgia law, the fact that Franklin and Murch were using their own automobiles is immaterial if the vehicles were being operated within the scope of their employment. Lewis v. Miller Peanut Co., 77 Ga.App. 380, 49 S.E.2d 221; Hinson v. United States, *supra*, 257 F.2d 181f. It is equally well settled in this State that the sole purpose of the use of the vehicle does not have to be furtherance of the employer's business. As long as one of the purposes is such, it makes no difference that the vehicle is "also being used in part for the accommodation of the driv-

er." Davies v. Hearn, 45 Ga.App. 276, 164 S.E. 273. To exonerate the master the deviation must be for purposes entirely personal to the servant. Where the latter is engaged in the business of his employer it is "immaterial that he join with this some private purposes of his own." Andrews v. Norvell, 65 Ga. App. 241, 244, 15 S.E.2d 808, 811.

I do not think the fact that the two servicemen involved here were on "leave status" is decisive.[2] It can hardly be maintained, in the light of *Hinson*, that a member of the armed forces ordered to report to another post of duty by a certain date is acting beyond the course of employment in driving his own automobile in a direct route to the place of assignment. Where the cases before me diverge from *Hinson* is the fact that Franklin and Murch drove far off the direct line of travel in order to visit relatives during their leave before proceeding to their newly assigned base. The Government emphasizes that the designation by the servicemen of his "leave address" amounted to no more than to indicate the place where they could be contacted in an emergency and did not constitute authorization to travel to or therefrom before reporting for duty at the new post. There is no question about that. Nor is there any real issue that Franklin's trip to Kentucky was outside the scope of his employment. It represented a complete deviation from "line of duty." So did Sergeant Murch's visit and stay at Americus. What we are concerned with here is whether Franklin's trip *to Jacksonville* and Murch's last trip *to Sumter* in order to report for duty were deviations from start to finish or whether at some point on the journey the master-servant relationship was resumed.[3]

---

1. Under California law the Ninth Circuit reached a diametrically opposite result in Chapin v. United States, 258 F.2d 465.

2. *Cf.* Owen v. United States, D.C., 258 F. Supp. 121.

3. I do not lose sight of the fact that the Government contends that the relationship of master and servant as between Murch and the Army ended when he *first* traveled by automobile to Shaw Air Force Base on January 13, 1967. "He had arrived at his point of destination, and all

I think that the applicable rule of law is found in Atlanta Furniture Co. v. Walker, 51 Ga.App. 781, 181 S.E. 498. The Georgia Court of Appeals said: "Although a servant may have made a temporary departure from the service of his master, and in so doing may for the time have severed the relationship of master and servant, yet where the object of the servant's departure has been accomplished and he has resumed the discharge of his duties to the master, the responsibility of the master for the acts of the servant reattaches." See also: Davies v. Hearn, *supra*; Palmer, Phinizy & Connell v. Heinzerling, 34 Ga.App. 544, 130 S.E. 537.

Granting that there was a total deviation from line of duty in traveling to and spending his leave time at Americus, there surely came a time during the automobile journey to Shaw Air Force Base when Sergeant Murch re-entered the course of military employment. The same is true of Franklin's trip from Ashland to Jacksonville. I think the two servicemen here involved were, at the time and place of the collisions "again reasonably near the authorized space and time limits" so as to be considered as having re-entered the service of their master. See Restatement 2d Agency § 327, p. 524. The fact that personal ends were also being served by the journey and by the arrival of the servicemen at the destination prior to the expiration of their leaves does not negate the fact that a governmental purpose created the necessity of the trip and the Government's business was being furthered. See O'Brien v. United States, supra, 236 F.Supp. 796.

I am quite aware that all of this is in the face of the decision of the Fifth Circuit in Kunkler v. United States, 295 F. 2d 370. The facts in the present cases cannot be satisfactorily distinguished from those in that litigation. I shall not try to do so. All I can say is that the

decision in *Kunkler* represents the view of the Court of Appeals as to the law of Florida in the absence of any controlling decision in that State. Nor is there any Georgia decision squaring with the facts in the present cases. I have ruled in accordance with what I perceive the Georgia law to be.

Whether or not an employee was acting in the course of his employment is generally a factual issue. The Government's motion is overruled in each instance. This does not foreclose a possibly different conclusion after fuller presentation of the evidence at trial. However, if the facts do not vary materially from those developed in the two motions, I intend to be governed by the views of the law expressed above.

As earlier noted, Franklin has also moved for a summary judgment. He contends that he was acting in line of duty and is not subject to suit. I withhold for the present a ruling on that aspect of the case.

---

trips made thereafter were on his own and made solely for his personal gratification." I disagree. The first trip

to Sumter, not the last, was made solely for his own convenience.