Roni J. PITT and Edward J. Pitt,
Her Husband, Plaintiffs,

v.

Kenneth G. MATOLA, Defendant.

Kenneth G. MATOLA, Third–Party Plaintiff,

v.

UNITED STATES of America,
Third–Party Defendant.

No. 94–CV–1248.

United States District Court,
N.D. New York.

June 23, 1995.

Stafford, Trombley, Purcell, Lahtinen, Owens & Curtin, Plattsburgh, NY (Thomas M. Murnane, of counsel), for plaintiffs.

Fischer, Bessette & Muldowney, Malone, NY (James P. Bessette, of counsel), for defendant and third-party plaintiff.

Thomas J. Maroney, U.S. Atty., for the N.D. of N.Y., Syracuse, NY (Paula Ryan Conan, Asst. U.S. Atty., of counsel), for third-party defendant.

**MEMORANDUM, DECISION & ORDER**

McAVOY, Chief Judge.

## I. BACKGROUND

On the morning of September 9, 1991, a two-car traffic accident occurred at an intersection within the confines of the Fort Drum Army Base. Three people were involved, each of whom was employed at the time by a branch of the United States Armed Services.

In Car # 1 were two civilian employees of the U.S. Air Force, Cheryl Bulriss and Roni Pitt, both secretaries at Plattsburgh Air Force Base. They were travelling together to attend a mandatory training seminar being conducted at Fort Drum. Ms. Bulriss was driving her own car pursuant to orders and authorization by the Air Force. Ms. Pitt, the only person injured in the accident, was her passenger. Car # 2 was driven by then-U.S. Army Chief Warrant Officer Ken Matola. Having completed the physical training portion of his day's duties shortly before, Matola was driving his own car to his on-base duty station at the time of the accident.

As a federal employee injured in the course of federal employment, Ms. Pitt was entitled to seek compensation for her injuries under the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101 et seq. Com-

pensation under this act is a federal employee's exclusive remedy against the government for injuries arising out of the course of federal employment. Pitt has received approximately $16,000 in compensation under FECA.

Approximately two years after the accident, the Pitts commenced a suit against Matola in New York State Supreme Court seeking compensation for Ms. Pitt's injuries and loss of consortium for her husband under New York State law. In 1994, Matola commenced a suit against Bulriss, who drove Car # 1, for contribution and/or indemnification in the Pitts' state court action against him.

Bulriss' attorney realized that she had been acting within the course of her duties at the time of the car accident and requested that the U.S. Attorney's Office enter the suit on her behalf. The U.S. Attorney agreed and on September 26, 1994 the case was removed to federal court. By stipulation filed on December 9, 1994, the United States was substituted as the third-party defendant pursuant to 28 U.S.C. § 2679(d)(2). Matola's attorney then realized that his client was entitled to the same treatment, and he requested that the U.S. Attorney enter the case on his behalf, which it has agreed to do pursuant to 28 U.S.C. § 2679(d).

The United States now moves to be substituted as defendant in lieu of Matola and seeks dismissal of the suit because this action has evolved into a federal action against the government seeking damages payable by the United States for personal injuries suffered while in the course of federal employment. The government claims that FECA is the Pitts' only remedy, and so this suit is now barred. Assuming arguendo that FECA does not apply, the government claims that this suit is barred by plaintiffs' failure to file the prerequisite administrative claim for preserving a negligence cause of action against the federal government under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq.

The Pitts acknowledge that FECA is the exclusive remedy against the United States available to Ms. Pitt for injuries arising out of the course of her employment. However, they disagree that Matola was acting within the scope of his employment at the time of the accident and note that the suit was originally commenced against Matola in his individual capacity. Plaintiffs claim that Matola was on his way to work when the accident happened, thus placing the accident outside the course of his federal employment. They also note that Matola was driving his own car at the time. Thus, they claim that neither FECA nor FTCA applies.

## II. ANALYSIS

### A. Scope of Employment

The Federal Drivers Act, added onto the Federal Tort Claims Act, bestows on the federal government exclusive responsibility for damages claims against its employees arising from the operation of vehicles within the scope of their employment. *Cronin v. Hertz Corp.*, 818 F.2d 1064, 1065 (2d Cir.1987); 28 U.S.C. § 2679(b). The Act does not define "scope of employment," but instead looks to the law of the state in which the accident occurred. *Id.* at 1065. Thus, the court must look to New York law to determine whether Matola was acting within the scope of his employment when the accident occurred.

New York law looks at several factors to determine whether an individual was acting within scope of his employment at the time of a particular incident. The parties here agree that *Lundberg v. State,* 25 N.Y.2d 467, 255 N.E.2d 177, 306 N.Y.S.2d 947 (1969) sets forth the applicable standard for determining scope of employment in New York. *Lundberg* holds that an employee acts within the scope of his employment: (1) "when he is doing something in furtherance of the duties he owes to his employer;" and (2) "where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities." *Id.* 306 N.Y.S.2d at 950, 255 N.E.2d at 179.

The military determination that an individual is "acting within the line of duty" at the time of an accident is not dispositive of whether he was acting within the scope of his employment. *Blesy v. United States,* 443 F.Supp. 358, 361 (W.D.N.Y.1978). However,

it is dispositive of the "control" element of the test. *Id.* at 362.

In regard to the "furtherance" element of the test, as the Fourth Circuit stated in examining New York's respondeat superior doctrine as it applies to military personnel, "the test is not ... one that requires the particular activity at the time of the accident, *i.e.*, the driving, to be the normal duty of the servant but is, rather, whether the master's business is then being substantially furthered." *Cooner v. United States*, 276 F.2d 220, 230 (4th Cir.1960). This determination requires an examination of all the surrounding circumstances. *Id.* at 229–30. New York recognizes that an employee acting for dual purposes may still create employer liability. *Blesy*, 443 F.Supp. at 363. More specifically, New York applies the "but for" test: "if the employee would not have undertaken the journey had the business purpose been canceled, the employee was acting within the scope of employment;" [however] ... "if the employee would have taken the trip in any event, then the employee was not acting within the scope of employment." *Id.* at 363.

In applying these standards to the case at hand, the court finds that Matola was acting within the scope of his employment at the time of the accident. Plaintiffs assert that, based on Matola's sworn statement given on the day of the accident that he "was going to work" when the accident occurred, he was not acting within the scope of his employment. Plaintiffs further argue that the fact that Matola drove his own car and that no particular time frame was set for Matola to arrive at his work station further show that he was not acting within the scope of his employment at the time of the accident.

It is true that generally an employee driving to or from work is not acting within the scope of his employment because the element of control over the employee is missing. *Lundberg*, 306 N.Y.S.2d at 950. Furthermore, an employee who is involved in an accident while conducting a personal errand during the course of the business day is not considered to be acting within the scope of employment. *Swartzlander v. Forms–Rite Business Forms & Printing Serv., Inc.*, 174 A.D.2d 971, 572 N.Y.S.2d 537, 538 (4th Dep't 1991).

However, it is clear from Matola's later affidavit, which clarifies the sworn statement given on the day of the accident, that on September 9, 1991 he went on duty at 7:00 am and performed the physical training portion of his duties until 8:00 am at which time he was allowed a "personal hygiene break" to clean up and change clothes before the remainder of his duties that day. He attests that he was on "active duty" during this entire time from 7:00 am onward. He remained on base during all times. This was confirmed by the Acting Claims Judge Advocate of the Army who investigated the incident. (Conan Aff., Attachment A). Thus, the court finds that Matola was acting "in the line of duty" when the accident occurred, and so his employer had the right to control him at that time. Additionally, the fact that Matola was operating his own car at the time of the accident does not preclude employer liability. *Blesy*, 443 F.Supp. at 361.

In regard to the "furtherance" element, despite the lack of clarity as to the particular time Matola was required to report to his work duty, the all the surrounding facts show that his travel was in furtherance of his employer's business. Even assuming arguendo that this travel involved a dual purpose, it is clear that it would not have been undertaken had the business purpose been canceled. Matola had finished one duty assigned by the employer, had taken an approved "personal hygiene break" on base, and was travelling to the point of his next assignment when the accident occurred. The court finds nothing in these facts which would warrant a finding that the trip would have occurred if he had not been required to go to his next duty station, and finds that his travel could only be in furtherance of the duties owed to his employer. This finding is in harmony with other cases in which the courts have found military personnel to have been acting within the scope of their employment while travelling far more extensively enroute to their next duty assignment. *See, e.g., Blesy*, 443 F.Supp. at 363; *Cooner*, 276 F.2d at 234. The court believes that the fact

that Matola was on duty at the time of the accident distinguishes it from *Bailey v. United States*, 451 F.2d 963 (5th Cir.1971) and *United States v. Browning*, 359 F.2d 937 (10th Cir.1966) relied upon by plaintiffs.[1]

## B. Substitution of Defendant

▇▇▇▇ Finding that Matola was acting within the scope of his employment when the accident took place, this action can only be viewed as one under the Federal Tort Claims Act. The FTCA provides the exclusive remedy to persons injured by a federal government employee acting within the scope of his employment at the time of the injury. *United States v. Smith*, 499 U.S. 160, 162, 111 S.Ct. 1180, 1183, 113 L.Ed.2d 134 (1991); 28 U.S.C. § 2679(b)(1). Under the FTCA, the federal government must be substituted for the individual government employee named as the defendant upon certification by the Attorney General that the employee was acting within the scope of his employment at the time of the incident giving rise to the suit. 28 U.S.C. § 2679(d)(1). The necessary certification has been made in this case, and the court, in light of the foregoing discussion agrees with it.[2] Thus, the United States is properly substituted for defendant Matola in the main action. 28 U.S.C. § 2679(d)(1). However, the following makes such action unnecessary.

## C. FECA's Application to Plaintiff Roni Pitt

▇▇▇ Because plaintiff Roni Pitt is a federal government employee who was injured in the course of her employment, her exclusive remedy is against the federal government under the Federal Employees Compensation Act. 5 U.S.C. § 8116(c). Plaintiffs acknowledge Ms. Pitt's exclusive remedy against her employer under FECA, but argue that they are still entitled to bring a

state action against Matola in his individual capacity. This is incorrect.

▇▇▇▇ It is clear that FECA provides the exclusive remedy for a federal employee injured in the scope of her employment even when the actor who allegedly caused the accident is also a federal government employee. *See Noga v. United States*, 411 F.2d 943, 944–45 (9th Cir.1969) (holding that the fact that a government employee was injured in a car accident where the driver of the car was also a federal employee did not change the fact that FECA provided her only remedy). In a case very similar to this one, the Ninth Circuit held that "the federal legislative objective in enacting the Federal Drivers Act while leaving the exclusivity provision of FECA intact was apparently to protect federal drivers from personal liability by rendering the Government liable in tort, in the case of non-federal employee plaintiffs, and by rendering the Government liable only under the FECA in the case of federal employee plaintiffs." *VanHouten v. Ralls*, 411 F.2d 940, 942–43 (9th Cir.1969). Thus, since Ms. Pitt has already been compensated for her injuries under FECA, she cannot seek further damages in this action for the same injuries in either federal or state court. *Vantrease v. United States*, 400 F.2d 853, 856 (6th Cir.1968). Thus, Ms. Pitt's claim is dismissed.

## D. FECA's Application to Plaintiff Edward Pitt

▇▇▇ As to Edward Pitt's claim for loss of consortium § 8116(c) of FECA states, in pertinent part, that:

the liability of the United States ... under this subchapter or any extension thereof with respect to the injury or death of an employee is *exclusive and instead of* all other liability of the United States ... to

1. *Bailey* held that because the civilian Army employee at issue in that case was off duty, was driving her own car, was not required by her job to travel, and was not under the supervision of her employer at the time of the accident, her tort suit against the government was not barred by FECA despite the fact that her injury had been incurred while on the Army base. *Bailey*, 451 F.2d at 967. Similarly in *Browning*, the civilian Air Force employee had completed her job duties

and was travelling home when the car accident occurred. *Browning*, 359 F.2d at 939.

2. U.S. Attorney's are authorized to make the Attorney General certifications under 28 U.S.C. § 2679(d) and AUSA Conan has done so in this case after investigation of the incident by the Department of the Army at Fort Drum. 28 C.F.R. § 15.3(a) (1994).

the employee, his legal representative, *spouse,* dependents, next of kin, and any other person otherwise entitled to recover damages from the United States ... because of the injury or death in a direct judicial proceeding, in a civil action, ... or under a Federal tort liability statute ... (emphasis added).

Thus, any claim for loss of consortium by Mr. Pitt is also barred by FECA. *See Posegate v. United States,* 288 F.2d 11, 14 (9th Cir. 1961); *Underwood v. United States,* 207 F.2d 862, 864 (10th Cir.1953); *Levine v. United States,* 478 F.Supp. 1389, 1391 (D.Mass.1979).

## III. CONCLUSION

In conclusion, the court dismisses the action in its entirety. This holding precludes the necessity of substituting the United States for defendant Matola, although the court finds that such a substitution would be legally proper. This holding also precludes the need to examine the government's argument that the plaintiffs failed to follow the administrative requirements for commencing an FTCA suit.

**IT IS SO ORDERED.**