Hamm v. United States

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

—————————

August Term, 2006

Argued:  February 22, 2007                    Decided:  April 11, 2007

Docket No. 06-3964-cv

—————————

ELIZABETH M. HAMM,

*Plaintiff-Appellant*,


—v.—


UNITED STATES,

*Defendant-Appellee.*

—————————

B e f o r e:

KEARSE, CABRANES, and KATZMANN, *Circuit Judges*


—————————

        Appeal from a judgment of the United States District Court for the Western District of New York (Larimer, *J.*)  granting defendant's motion to dismiss for lack of subject matter jurisdiction under the Federal Tort Claims Act.  As the general New York rule that employees are not acting within the scope of their employment when commuting to work applies to a military reservist who was traveling from his home to the United States Army Reserve Center, the United States cannot be liable under *respondeat superior*.  Affirmed.

—————————

                    DONALD W. O'BRIEN, JR., Woods Oviatt Gilman LLP,
                    Rochester, NY, *for Plaintiff-Appellant*.

CHRISTOPHER V. TAFFE, Assistant United States Attorney, *for* Terrance P. Flynn, United States Attorney for the Western District of New York (Kristin Zook, law clerk, on the brief), *for Defendant-Appellee.*

_____

KATZMANN, *Circuit Judge*:

This case presents the question of the scope of the government's liability when a military reservist is involved in a car accident on his way to a training exercise. The facts of the matter at hand do not distinguish it from the basic case of an employee who, it is clear under New York law, is not acting within the scope of his or her employment when he or she commutes to work. We therefore affirm the judgment of the district court that the Federal Tort Claims Act ("FTCA") does not supply the federal courts with subject matter jurisdiction to consider this claim.

**I.**

The underlying facts are undisputed. On the morning of November 28, 2001, Specialist Jonathan Goodwin of the United States Army Reserve was en route from his residence in Rochester, New York to the United States Army Reserve Center ("Reserve Center") in Penn Yan, New York, a distance of approximately 60 miles. He was due to be at the Reserve Center for the second day of a two-day drill intended as a make-up for a drill he had missed in October. After his make-up drill on November 27, Goodwin was released and sent home with instructions to return the following morning at 8:00 a.m. Goodwin, however, was running late on November 28. When the accident occurred, about five miles from the Reserve Center, it was 8:55 a.m. Goodwin, nearly an hour late to report for duty, wearing his Battle Dress Uniform, and driving in heavy fog, attempted to pass a slower-moving vehicle and struck the car driven by the plaintiff, Elizabeth M. Hamm.

2

Goodwin and Hamm were transported to the hospital. Goodwin did not report for duty that day. Hamm was permanently disabled as a result of the accident and currently receives Social Security disability benefits.

Captain Anthony J. Struzik, after consultation with battalion headquarters, chose to report Goodwin as present and pay him for November 28 though Goodwin did not report for duty. Struzik explained that he believed that Goodwin should be paid because he was on his way to drill. Goodwin was not reimbursed for travel expenses. Personal automobile insurance covered his medical expenses.

Goodwin pleaded guilty to Assault in the Third Degree and Reckless Driving in Yates County Court on July 30, 2002.

On October 13, 2004, the plaintiff brought this suit in the United States District Court for the Western District of New York against the United States, under the FTCA, alleging that Goodwin was acting within the scope of his employment. She seeks five million dollars in damages for her injuries.

After the completion of discovery, the United States moved to dismiss Hamm's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Goodwin was not acting within the scope of his employment at the time of the accident. The district court (Larimer, *J.*) agreed and granted the motion. This appeal followed.

## II.

"In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a

3

preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). Where, as here, "the trial court dismissed on the basis of the complaint alone or the complaint supplemented by undisputed facts from the record," we review the dismissal for lack of subject matter jurisdiction *de novo*. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 138 (2d Cir. 2001) (internal quotation marks omitted).

"[T]he terms of [the United States's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996) (explaining that sovereign immunity is "jurisdictional in nature," thus where a waiver of sovereign immunity does not apply, a suit should be dismissed under Fed. R. Civ. P. 12(b)(1) and not Fed. R. Civ. P. 12(b)(6) for failure to state a claim). "The FTCA, 28 U.S.C. §§ 1346(b), 2401(b), and 2671–2680, constitutes a limited waiver by the United States of its sovereign immunity" and allows for a tort suit against the United States under specified circumstances. *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998). Under the FTCA, a private citizen may sue for injuries caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Sovereign immunity is waived if a claim meets six requirements. It must be

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the

4

place where the act or omission occurred.

*FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (internal quotation marks omitted) (modification in original).

The parties here only seriously contest the fifth element, whether Goodwin was acting within the scope of his employment. The FTCA defines "[a]cting within the scope of his office or employment" in the case of a member of the military as "acting in line of duty." 28 U.S.C. § 2671. "The courts have uniformly equated the FTCA's 'line of duty' language with the phrase 'scope of employment,' as that concept is defined by the *respondeat superior* law of the jurisdiction in which the accident occurred." *Taber v. Maine*, 67 F.3d 1029, 1033 (2d Cir. 1995). Therefore, we look to New York's *respondeat superior* law to determine if Goodwin was acting within the scope of his employment while driving to the Reserve Center.

Under New York law, an employee acts within the scope of his employment when both (1) "he is doing something in furtherance of the duties he owes to his employer," and (2) "the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities." *Lundberg v. State*, 255 N.E.2d 177, 179 (N.Y. 1969); *see also Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243, 252 (2d Cir. 1996) ("In New York, a master is not responsible for the wrongful acts of his servant who was not subject to the actual or potential control of the master when the wrongful acts took place." (citing *Lundberg*)).

*Lundberg* makes clear that, "[a]s a general rule, an employee driving to and from work is not acting in the scope of his employment," because "[a]lthough such activity is work motivated, the element of control is lacking." 255 N.E.2d at 179. Hamm contends that the general rule should not apply here because the military had the requisite control given that (1) Goodwin was

5

subject to military discipline, (2) he had a pattern of absenteeism, and (3) the military determined that he was acting in the line of duty. Alternatively, she argues, even if there was no control, the military's decision to pay Goodwin for November 28 constitutes "ratification" of his actions.

We disagree. As the district court correctly stated, there is "no significant distinction between the level of control that the Army has over a reservist driving to a training exercise in the morning and the level of control that a private employer has over an employee driving to work." The military did not require Goodwin to drive between these locations; "he had voluntarily chosen to drive." *Lundberg*, 255 N.E.2d at 179. Nor did the military instruct Goodwin on the route to take between Rochester and Penn Yan or implicitly direct the route by providing him with a limited amount of time to make the journey. *Cf. Cooner v. United States*, 276 F.2d 220, 234 (4th Cir. 1960) (applying New York law to hold that a serviceman ordered to travel directly from Washington, D.C., to Ottawa, Canada, was acting within the scope of his employment because, *inter alia*, "the direct route he took was implicitly required" because "he was given only a limited amount of time to complete the long journey"); *Hinson v. United States,* 257 F.2d 178, 181-82 (5th Cir. 1958) (applying Georgia law to hold that there was subject matter jurisdiction under the FTCA where "Capt. Westcott was performing a specific duty which had been assigned him—to travel to Fort Sam Houston," and not merely "going to work" (emphases omitted)). In other words, Goodwin's drive to Penn Yan was not based on the military's requirements or orders. It was done purely on his own time in order to commute to his place of employment.

Hamm would have us hold that because Goodwin was subject to military discipline under the Uniform Code of Military Justice ("UCMJ"), the military controlled the commute. As

Hamm's counsel conceded at oral argument, this approach would hold the military potentially liable under *respondeat superior* for any wrongful conduct by a military employee outside of work hours that may subject the employee to military discipline, at least where the conduct is, in some way, "in furtherance of the duties he owes to his employer." *Lundberg,* 255 N.E.2d at 179; *see also* 10 U.S.C. § 802(a) (listing those subject to the UCMJ). This drastic expansion of federal liability would be inconsistent with the plain language of the FTCA. The FTCA waives sovereign immunity only where "a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). There is no private analog to the UCMJ. Therefore, Hamm's approach would subject the United States to greater potential liability than a private tortfeasor. We decline to take this step and instead hold that, without more case-specific evidence of control, the UCMJ alone is insufficient to establish that requisite level of control required for *respondeat superior* liability under New York law.[1]

[1] Hamm's reliance on *Blesy v. United States*, 443 F. Supp. 358 (W.D.N.Y. 1978), is unavailing. In *Blesy* the court held that the United States was liable for an accident that occurred while a soldier was traveling in his own car from a military base in Georgia to a military base in New York pursuant to a compassionate reassignment transfer order. In so holding it relied in part on the soldier's exposure to punishment under the UCMJ as proof of the government's control over the soldier. *See Blesy,* 443 F. Supp. at 361-62 (holding that the required element of control was present because the soldier "at all times was accountable to the Army for his actions under the Uniform Code of Military Justice, including the manner in which he drove his automobile"). For the reasons stated herein, we reject *Blesy* to the extent it may be read to expose the government to liability for a soldier's conduct solely because the soldier may be exposed to military discipline under the UCMJ.

*Blesy* also relied in part on a line of New York cases holding that an employer is liable for injuries incurred where an employee uses his private automobile as part of his job duties, for example where a salesperson drives to visit customers. *Id.* at 361. *Lundberg* makes clear that an employee is not acting within the scope of his employment when he commutes to work. The *Lundberg* Court distinguished employees' commutes to their places of employment from employees' actions while performing their job duties. *See Lundberg*, 255 N.E.2d at 179 ("An exception to this rule [that an employee driving to and from work is not acting in the scope of his

7

Additionally, we note that a number of Courts of Appeals have held that the UCMJ does not evidence the requisite control for *respondeat superior* liability, albeit in construing the law of other states. *See Hartzell v. United States*, 786 F.2d 964, 968 (9th Cir. 1986) ("[A] soldier traveling between duty stations is not acting within the scope of employment notwithstanding the military's general right to control his activities."); *Bissell v. McElligott*, 369 F.2d 115, 119 (8th Cir. 1966) ("[T]he unique control which the Government maintains over a soldier has little if any bearing upon determining whether his activity is within the scope of his employment.").

Similarly, and even more clearly, Goodwin's history of absenteeism did not serve to increase the military's control over his subsequent actions. At most his absenteeism exposed him to a risk of more severe discipline from his employer. As the district court explained, however, Goodwin's desire to avoid such discipline by arriving at work in a timely manner does not evidence the military's right to control his commute nor does it distinguish Goodwin from the average commuter who is required to arrive at work at a set time. We see nothing in *Lundberg* to suggest that application of its rule depends on an employee's history of absenteeism or punctuality.

Finally, the military's line-of-duty determination does not indicate the requisite control.

---

employment] is, that an employee who uses his car in furtherance of his work is acting in the scope of his employment while driving home from his last business appointment . . . ."). Thus *Blesy* does not alter our determination that, notwithstanding the UCMJ, the military here did not exercise the level of control required for *respondeat superior* liability under New York law. Furthermore, lower courts construing New York law have generally reached a contrary result in similar circumstances. *See, e.g.*, *Panchak v. United States*, No. 84 Civ. 3352(WCC), at *4, 1985 WL 1518 (S.D.N.Y. June 4, 1985) (holding that where a Navy civilian employee traveled from Massachusetts to Illinois to attend a conference, the United States was not liable because, "as in *Lundberg*, it must be said that [the employee] was free to go where he pleased during his non-working hours"); *Mack v. Miller,* 92-cv-6418L (W.D.N.Y. Dec. 17, 1993) (unpublished).

The military's internal decision does not alter our analysis, as it does not provide any indication that the military controlled Goodwin's drive to the Reserve Center. *See Walsh v. United States*, 31 F.3d 696, 699 (8th Cir. 1994) (holding that the line-of-duty finding, "made for purposes of determining [the employee's] right to receive benefits, is not relevant to a determination of whether [the employee] was acting 'in line of duty' for purposes of ascertaining plaintiff's right to recover tort damages from the government under the FTCA"); *Green v. Hall,* 8 F.3d 695, 699 n.3 (9th Cir. 1993).

Hamm alternatively contends that even if Goodwin were not acting within the scope of his employment, the military still would be liable under the FTCA because it ratified Goodwin's actions by paying him. This approach misconstrues the law of ratification. "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Restatement (Second) of Agency § 82 (1958), *cited in Standard Funding Corp. v. Lewitt*, 678 N.E.2d 874, 877 (N.Y. 1997) ("[A] principal may become liable for its agent's unauthorized acts by adopting the agent's actions and electing to become a party to the transaction."); *see also* Black's Law Dictionary 1289 (8th ed. 2004) (defining "ratification" as, *inter alia*, "[c]onfirmation and acceptance of a previous act, thereby making the act valid from the moment it was done"). No such ratification took place here. The relevant "prior act" is Goodwin's negligent driving and the United States has not "given effect" to that negligent driving merely by paying Goodwin.[2] There is no indication that the government sanctioned

---

[2] We further note that the employee in *Lundberg* received a mileage allowance to pay for his travel expenses, and that did not alter the New York Court of Appeals's determination that the employer was not liable. *See* 255 N.E.2d at 179. The Court of Appeals, however, did not

Goodwin's wrongful conduct or attempted any cover-up of his improper activities.

We have considered all of the plaintiff-appellant's remaining arguments and find them to be without merit.

### III.

For the foregoing reasons, we hereby **AFFIRM** the judgment of the district court dismissing the plaintiff's claim for lack of subject matter jurisdiction.

---

consider a ratification argument.