OTIS ALDINE KIGER, FATHER; SADIE KRITS KIGER, MOTHER; HILDA KATHRIN KIGER, SISTER; EDMUND I. ADAMS, NEXT FRIEND OF DEBORAH LYNN KIGER AND DONNA GWYNN KIGER, MINOR CHILDREN OF OTIS ALDINE KIGER, JR., DECEASED EMPLOYEE v. BAHNSON SERVICE COMPANY, EMPLOYER; MARYLAND CASUALTY COMPANY, INSURER.

(Filed 19 December 1963.)

**Master and Servant § 60—**

Where the employee is directed by his superiors to report for duty at successive municipalities for work as a necessary incident to the employment, and is paid for his travel and travel time and permitted to travel by bus or his private car, a fatal accident to the employee while driving his car to the city designated arises out of the employment.

APPEAL by defendants from *Johnston, J.,* July 15, 1963 Session, FORSYTH Superior Court.

This proceeding originated before the North Carolina Industrial Commission upon a claim for benefits resulting from the death of Otis Aldine Kiger in an industrial accident. All jurisdictional and material facts necessary to establish recovery were stipulated, except this one question: Did the death of the employee arise out of and in the course of his employment? The hearing Commissioner, the full Commission, and the Superior Court Judge in review answered the question in the affirmative and awarded death benefits. The employer and its insurance carrier excepted and appealed.

*Hayes & Hayes by James M. Hayes, Jr., for plaintiff appellees.*

*Deal, Hutchins and Minor by John M. Minor for defendant appellants.*

HIGGINS, J. The Industrial Commission has found that Otis Aldine Kiger, age 20 years, was fatally injured by accident arising out of and

in the course of his employment by Bahnson Service Company. All other material facts necessary to the award of compensation were stipulated. The appeal, therefore, presents the question whether there is any substantial evidence in the record that death arose out of the employment.

Prior to Friday, August 12, 1960, the deceased worked for Bahnson Service Company as a mechanic's assistant in one of its field units at Saxapahaw. On that day he completed his work. His foreman, Mr. Smith, knowing the deceased lived near Winston-Salem, instructed him to report to the main office there for assignment to another job. He followed the instructions and on Monday, August 15, reported to Mr. Blackwelder, installation superintendent in charge of the Winston-Salem office. The superintendent handed him a memorandum introducing him to the foreman in charge of the employer's field unit at Laurinburg and instructed him to report there the following morning at seven o'clock. While on his way as ordered, driving his own vehicle as his employment permitted, he had an accident and was killed.

Here we quote in part testimony of Mr. Blackwelder: "I gave him the time to be at the job . . . at 7:00 a.m. on Tuesday morning. I directed him to report to Morgan Mills in Laurinburg. As far as travel pay is concerned . . . he would have been paid bus fare from Saxapahaw . . . and his travel time would have been approximately two hours at his base pay. Neither I nor the company specified any particular route that he was to travel to Laurinburg. . . . For his continued employment it was necessary that he contact me for assignment which he did. Employees do have a choice of selecting their own private vehicles or a bus . . . If the employee owns a car and wants to use it, . . . that is his privilege. . . . The bus fare of which I speak is limited to bus fare from the last job to the next. . . . The deceased lived with his parents at Rural Hall except when he was out in the field working. *Mr. Smith* (foreman at Saxapahaw) *asked him* (deceased) *since he lived nearby, . . . to contact me over the weekend.*"

Claimants introduced evidence that Mr. Blackwelder's memorandum directing deceased to report to Laurinburg allowed three hours travel time for which he would be paid. According to Mr. Blackwelder's recollection the memorandum allowed two hours travel time.

Mr. Blackwelder testified: "For his continued employment it was necessary that he contact me." It was deceased's duty to follow Mr. Smith's instruction to contact Mr. Blackwelder. Likewise it was necessary for him to follow Mr. Blackwelder's instructions to report to the main office, and having done so and received the written orders to report to Laurinburg, is it not a permissible inference from these facts

that Saxapahaw is no longer of material consideration in the case? Mr. Smith could and did send deceased to Winston-Salem. Mr. Blackwelder could and did order him to Laurinburg. While obeying these orders the fatal accident occurred.

The facts distinguish this case from those holding that off-premises injuries during travel to and from work are not compensable. *Bray v. Weatherly & Co.*, 203 N.C. 160, 165 S.E. 332; *Hunt v. State*, 201 N.C. 707, 161 S.E. 203. On the contrary, "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown." (citing many cases) *Brewer v. Trucking Co.*, 256 N.C. 175, 123 S.E. 2d 608.

Surely in this case the fatal accident is fairly traceable to the employment as a contributing cause. *Hardy v. Small*, 246 N.C. 581, 99 S.E. 2d 862. The deceased was being paid during travel in the manner approved by the employer. "Where any reasonable relationship to employment exists, or employment is a contributory cause, the court is justified in upholding the award as 'arising out of employment'." *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 117 S.E. 2d 476.

Under the liberal construction rule which is a part of workmen's compensation law, we hold the evidence was sufficient to support the finding and the conclusion that the fatal accident arose out of and in the course of employment.

The judgment is

Affirmed.