NORTH CAROLINA STATE HIGHWAY
COMMISSION, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 730.

United States District Court
E. D. North Carolina,
New Bern Division.

Aug. 21, 1968.

Thomas Wade Bruton, Atty. Gen., of
N. C., by Fred P. Parker, III, Staff At-
torney, Raleigh, N. C., for plaintiff.

Robert H. Cowen, U. S. Atty., by Ger-
ald L. Bass, Asst. U. S. Atty., for defend-
ant.

## OPINION and ORDER

LARKINS, District Judge:

This cause comes before the Court as
a civil action against the United States,
filed pursuant to provisions of the Fed-
eral Tort Claims Act,[1] arising out of a

---

1. 28 U.S.C.A. § 1346(b) provides in perti-
nent part:

"(T)he district courts * * * shall
have exclusive jurisdiction of civil actions
on claims against the United States, for
money damages, accruing on and after
January 1, 1945, for injury or loss of
property, or personal injury or death
caused by the negligent or wrongful act
or mission of any *employee* of the Gov-
ernment while *acting within the scope of
his office or employment, under circum-
stances where the United States, if a
private person, would be liable* to the
claimant in accordance with the law of
the place where the act or omission oc-
curred." (emphasis added).

28 U.S.C.A. § 2671 provides in perti-
nent part:

"As used in this chapter and sections
1346(b) and 2401(b) of this title, the
term—

* * * * *

" 'Employee of the government' in-
cludes officers or employees of any fed-
eral agency, members of the military or
naval forces of the United States * * *.

" 'Acting within the scope of his office
or employment', in the case of a member
of the military or naval forces of the
United States, means acting in line of
duty."

28 U.S.C.A. § 2674 provides that the
United States is liable in tort claims cases
"in the same manner and to the same
extent as a private individual under like
circumstances * * *."

collision, which occurred in the Eastern District of North Carolina, between an automobile owned and operated by a Marine sergeant, and plaintiff's bridge. Plaintiff Highway Commission, in its complaint, asserts that George Robert McBride, a member of the United States Marine Corps, was negligent in the operation of his automobile; that such negligence resulted in a collision with and damage to plaintiff's bridge; that at the time and place of such negligence, McBride was acting within the course and scope of his employment and in the performance of his duties; and that therefore, his employer, the United States, is liable for the damage, under the doctrine of *respondeat superior*.

Defendant, United States, has moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment, conceding, for the purpose of its motion, negligence in the operation of the automobile at the time and place alleged in the complaint. Damages having been stipulated, one question is presented: whether Sergeant McBride was acting within the scope of his employment at the time that his automobile collided with plaintiff's bridge. Absent a conclusion that he was acting within the scope of his employment, the United States cannot, as a matter of law, be held liable in this action.

The significant facts, which are not in dispute, are as follows. George Robert McBride, a Master Sergeant in the United States Marine Corps., was stationed at Camp Lejeune, North Carolina, when at 8:00 A.M. on May 20, 1965, he received orders effecting for him as of that time and date, a permanent change of station and directing him to report, not later than 12:00 midnight, June 1, 1965, to his new permanent duty station at Portland, Maine. The orders authorized four days proceed time, five days delay en route, three days travel time,[2] and provided that the delay time, less proceed and travel time, would be chargeable as annual leave.

Having checked out at Camp Lejeune on May 20, 1965, at 8:00 A.M., McBride nonetheless remained there until the early morning of May 29, 1965, when he packed his personal belongings into his privately owned automobile[3] and departed the Camp, driving westerly on North Carolina Highway 24 toward Jacksonville, North Carolina. In an affidavit upon which both parties rely, Sergeant McBride states that his intention was to breakfast at a restaurant in Jacksonville and then visit some friends there before driving on to Maine. His intention, however, was thwarted when, shortly after turning from Camp Lejeune's Main Gate onto Highway 24, McBride's automobile collided with the Northeast Creek Bridge, to the asserted detriment of plaintiff Highway Commission.

■ The problem presented by the subsequent action, whether a serviceman traveling between duty stations is acting within the scope of his employment, has been litigated often, and the resultant body of case law is a mosaic of differentiation and distinguishment. This fact is due not to the collective inability of the courts to reach any sort of consistency of approach but rather to the methodology of cases of this nature. A glance at that methodology will indicate why this is so. First, Title 28 U.S.C.A. § 1346(b) provides that *exclusive* jurisdiction for tort claims against the United States shall be in its district courts.

---

2. Marine Corps regulations require that proceed time, leave (delay en route), and travel time be charged in that sequence. P/T 5, Part C: Proceed Time and Delay to Count as Leave in the Execution of Travel Orders, paragraph 5100, subparagraph 2.

3. Sergeant McBride's orders did not specify any particular mode of transportation and it is not contended that use of his own automobile was violative of Marine Corps regulations with regard to change of station. That some remuneration was contemplated is indicated by the following language in the orders: "You will report to the Disbursing Officer within three working days after completion of travel to settle travel expenses."

Thus all of the cases have been decided at the federal court level. Secondly, it is clear that the phrase "acting in line of duty" found in 28 U.S.C.A. § 2671 referring to military personnel does not expand the doctrine of *respondeat superior* beyond the scope of office or employment test, Bissell v. McElligott, 369 F.2d 115 (8th Cir., 1966), certiorari denied 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967); Myers v. United States, 219 F.Supp. 71 (W.D.Mo.1963), aff'd 331 F.2d 591 (8th Cir., 1964); and further that in determining whether a federal civilian or military employee was acting within the scope of his employment, it is the law of *respondeat superior* of the state in which the act or omission occurred, which controls, Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L. Ed. 761 (1955). But, since the state courts can never speak on the exact factual situations,[4] the state law, which the federal courts must apply to resolve these problems, can never be specifically instructive. See Cooner v. United States, 276 F.2d 220, 223 (4th Cir., 1960). That the cases are postured this way does not render them impossible of resolution, of course (although it does serve as a basis for some of the confusion that exists in the decisions and as a reason for most courts' launching into a discussion of what other federal courts, similarly situated, have done). What we must do is analogize the situation of the United States as an employer of military personnel to the situation of a private employer and determine, under the state law of *respondeat superior*, whether, under the circumstances of the case, a private employer would be liable. 28 U.S. C.A. § 1346(b); 28 U.S.C.A. § 2674; Bissell v. McElligott, supra; McCall v. United States, 338 F.2d 589 (9th Cir.,

1964); United States v. Eleazer, 177 F. 2d 914 (4th Cir. 1949). Thus, the issue of liability in this case is governed by the North Carolina law of *respondeat superior* applicable to private employers.

The Court sees no good purpose in adding to the already voluminous material in the reports an extended discussion comparing again all of the federal cases.[5] Reference, however, will be made to certain of them that bear upon the particular facts of this case, the most important of which is that McBride, at the time of this collision, was on a "leave" status. From 8:00 A.M. on May 20, when his duties ceased at Camp Lejeune, until 12:00 midnight on June 1, it was of no concern to the United States Marine Corps as his *employer*[6] where he was, and further, it was of no concern to the Marine Corps how he got to Maine. Their concern, as an *employer*, was that he get there, and that he be there by the appointed hour. In other words, this was not a point-to-point transfer with the estimated time between points measured out and McBride ordered to proceed forthwith. Rather, it was a transfer coupled with leave in which McBride had sufficient time to pursue his own pleasures until June 1, 1965. Plaintiff relies upon Cooner v. United States, 276 F.2d 220 (4th Cir., 1960), and urges that the law of that case should be followed (plaintiff's brief, p. 3). *Cooner*, however

"* * * does not involve a soldier on leave but, rather, one travelling directly from one duty station to another, under specific directions to do so, and using an authorized mode of transportation. He had no personal motive in driving to Canada but was *ordered* to make the trip, *and was allowed only sufficient time to drive to Ottawa and no free time for any side*

---

4. 28 U.S.C.A. § 1346(b).

5. For a good comparison discussion, see Cooner v. United States, 276 F.2d 220 (4th Cir., 1960). See also Kimball v. United States, 262 F.Supp. 509 (D.N.J. 1967).

6. The control factor stemming from the Uniform Code of Military · Justice pro-

visions relating to reckless and drunken driving, and relied upon by some courts, is to be considered, but should be considered for what it is, a unique governmental aspect of the military not related directly to the military's function as an employer. It is not considered by this Court to be realistically determinative.

*trips."* (second emphasis added). 276 F.2d at 224.

Further, *Cooner* has this to say on the "leave" factor:

"(a) serviceman on leave or on pass cannot, normally, be said to be acting within the scope of his employment. He is in a similar position to a private employee during the latter's non-work hours or vacation. His activities at such times consist of his personal affairs, not usually connected with the business of the employer." 276 F.2d at 225.

In order to rely on *Cooner*, plaintiff has urged that Sergeant McBride was not on leave, but was, in fact, on travel status at the time of the collision, asserting that the computation procedure above referred to,[7] when applied to McBride's situation, would place him in the first day of travel time rather than, as the defendant asserts, the last day of delay en route. By the Court's calculation, McBride would have been on delay en route or leave status until 8:00 A.M. on May 29, 1965, and on travel status thereafter. Since the collision occurred at or about 5:00 A.M. on May 29, McBride was technically on delay en route status. But is this technicality determinative? Should there be a magic time zone of liability, into which McBride's automobile would have slipped at precisely 8:00 A.M. on May 29—a sort of "now you aren't, now you are" test? Clearly not. If there is a meaningful distinction between "travel coupled with leave" cases and "point-to-point direct transfer" cases, technical labels applied to days between cessation of duty at one post and resumption of duty at another cannot be controlling. Cobb v. Kumm, 367 F.2d 132 (7th Cir., 1966) affirming Cobb v. United States, 247 F.Supp. 505 (N.D.Ill. 1965); Kimball v. United States, 262 F.

Supp. 509 (D.N.J.1967). And if the distinction is relied upon to arrive at nonliability in the "travel coupled with leave" cases, that non-liability must reasonably extend from cessation of duties to resumption of duties. *Cooner,* a "point-to-point direct transfer" case, cannot avail plaintiff. In point of fact, *Cooner,* in its discussion of United States v. Eleazer, 177 F.2d 914 (4th Cir., 1949), and United States v. Sharpe, 189 F.2d 239 (4th Cir., 1951) (both "travel coupled with leave" cases), suggests that the distinction under discussion remains a meaningful one in the Fourth Circuit, although it reminds us that *Eleazer* and *Sharpe* were decided before United States v. Williams, supra, and thus, that any consideration given the distinction must come with an eye to the application of state law for ultimate resolution.

▊ Looking to that law, the North Carolina law of *respondeat superior,* this Court must conclude that a private employer, under the circumstances of this case, would not be held liable. Liability in North Carolina is predicated upon the existence of (1) the employee's negligence, (2) that negligence being the proximate cause of the injury, and (3) the fact that the relation of master and servant existed between the employer and employee at the time of and in respect to the very transaction out of which the injury arose. Graham v. North Carolina Butane Gas Co., 231 N.C. 680, 58 S.E.2d 757, 17 A.L.R.2d 881 (1950). As before stated, the Court assumes, as stipulated for purposes of defendant's motion, that negligence and proximate cause exist. As to number (3), the most instructive North Carolina case is one involving the workmen's compensation law, Hunt v. State, 201 N.C. 707, 161 S.E. 203 (1931).[8] It is, sur-

---

7. See note 2, supra.

8. Although the test applied in a workmen's compensation case is worded differently (whether the injury "arose out of and in the course of employment") than the "scope of employment" test of *respondeat superior* set out in Graham v. North

Carolina Butane Gas Co., the two are roughly analogous and a workmen's compensation case may be helpful in resolving a *respondeat superior* negligence action *if* it is kept in mind that the workmen's compensation law is possessed of very liberal construction rules, i. e., "(w)here any

prisingly, comparable on its facts. David Hunt was a member of the North Carolina National Guard. Pursuant to orders from the military authorities of the State and the United States, his company was ordered to go to Morehead City, North Carolina, on July 6, 1930, for military services connected with the Guard's annual encampment. Transportation was furnished for the company by the War Department of the United States on trains chartered for the occasion. In accordance with a custom under which not all of the company's personnel were required to report at the same time, Hunt was given by his commanding officer a leave of absence during the first week of camp and was ordered to report for duty at the camp on July 13, 1930, at 6:00 A.M. Hunt was privately employed in Oxford, North Carolina, where he worked during the week of his leave. At 11:00 P.M. on July 12, Hunt left work and shortly thereafter began his trip to Morehead City, driving his private automobile along the most direct route. On the way, his automobile collided with another and Hunt was killed. He was entitled to receive military pay from the time he left his home in Oxford, but the costs incident to the automobile trip were his own, although the War Department would have furnished the transportation by train, and although his commanding officer had cause to believe that he would in fact travel by automobile. As stated by the North Carolina Supreme Court, "(i)t was his duty to obey the order of the commanding officer to go to the camp, but he had no work to do until he got there. He was to report his presence at 6 o'clock in the morning, and then his term of actual service was to begin." 201 N.C. at 709, 161 S.E. at 204. Quoting from the Harvard Law Review, the

Court had this to say in arriving at a test:

"* * * only those are regarded as in the course of the employment which are done within the master's premises or upon some means of conveyance to or from his place of work which is provided by the master for the sole use of his servants and which the servant is required or entitled to use by virtue of his contract of employment." 201 N.C. at 711, 161 S.E. at 205.

Then, quoting from I Honnold on Workmen's Compensation, the Court continues:

"The rule has been established in accordance with sound reason that the employer's liability in such cases depends upon whether the conveyance has been provided by him, after the real beginning of the employment, in compliance with, one of the implied or express terms of the contract of employment, for the mere use of the employee, and is one which the employees are required, or as a matter of right are permitted, to use by virtue of that contract. Pursuant to this rule, the employee is in the course of employment if he has a right to the transportation, but not if it is gratuitous, or a mere accommodation." 201 N.C. at 711, 161 S.E. at 205.

The Court held the injury non-compensable. Hunt, like McBride, was on leave. The military was not concerned with either's activities during the time of the leave. All that concerned the military in each instance was that the man appear at the stated time and place. Each was on his way in his private automobile, the use of which was a *mere accommodation*. That McBride might have received the cost of public transportation between

---

reasonable relationship to the employment exists, or employment is a contributory cause, the court is justified in upholding the award as 'arising out of employment.'" Allred v. Allred-Gardner, Inc., 253 N.C. 554, 117 S.E.2d 476 (1960). Thus it would be fair to say at least that where a given set of circumstances

were found not to meet the workmen's compensation test for "arising out of and in the course of employment," the same set of circumstances would not be within the stricter *respondeat superior* scope of employment test—although the converse might not be true.

bases even though he drove his own car would not alter the comparison, although Hunt, having opted not to ride the trains provided, would not have received any travel costs. Under the language of the North Carolina Court, this fact would still have rendered use of the automobile "gratuitous, or a mere accommodation." And McBride, like Hunt, " * * * had not reached the place where he could do any work for his employer; he was not in a car provided by or under the control of his employer; he was not within the ambit of the camp or the sphere of the proposed service." 201 N.C. at 711, 161 S.E. at 205.

*Hunt* would appear to be controlling and require a finding that McBride was not within the scope of his employment at the time of the collision. The case is an old one, however, decided in 1931. How much vitality does it have today? Plaintiff cites and relies strongly on a 1963 case, Kiger v. Bahnson Service Company, 260 N.C. 760, 133 S.E.2d 702 (1963). There an employee whose work carried him to various field units was instructed to report to his employer's main office in Winston-Salem, North Carolina, for assignment to his next job. He reported on one day to a superintendent in Winston-Salem who handed him a memorandum instructing him to report for work the next morning at 7:00 A.M. to Laurinburg, North Carolina. He would have been paid bus fare from the last job to the next. Choosing instead to drive his own automobile, which was permitted, he had an accident en route. The Court, "(u)nder the liberal construction rule which is a part of workmen's compensation law," held that the accident arose out of and in the course of employment. But the Court says specifically that "(t)he facts distinguish this case from those holding that off-premises injuries during travel to and from work

are not compensable," citing Hunt v. State. Thus *Kiger* serves to reaffirm *Hunt,* the Court grounding *Kiger* not on any principle contrary to *Hunt,* but on the principle that "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown." 260 N.C. at 762, 133 S.E.2d at 704. Therefore, while *Kiger* might be helpful in, for instance, a point-to-point direct transfer for temporary duty situation, it cannot control in the one at bar.

■ It is the opinion of this Court that the law of Hunt v. State, supra, is controlling and that nothing to the contrary is commanded or suggested by the two cases relied upon most heavily by plaintiff, Kiger v. Bahnson Service Company, supra, and Cooner v. United States, supra. It is held that, under the law of *respondeat superior* of North Carolina, the relation of master and servant did not exist between the United States and Sergeant George Robert McBride at the time of and in respect to the very transaction out of which the damage to plaintiff's bridge arose, and that therefore George Robert McBride was not acting within the scope of his employment under Title 28 U.S.C.A. § 1346(b) so as to subject the United States to liability.

### ORDER

Now, therefore, in accordance with the foregoing, it is:

Ordered that the motion of the defendant United States for summary judgment be, and the same is hereby allowed;

Further ordered that plaintiff's claim for a relief under the Federal Tort Claims Act be, and the same is hereby dismissed.