The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before Deputy Commissioner Garner and the additional evidence presented before Deputy Commissioner Baddour; the appealing party has shown good grounds to reconsider the evidence, receive additional evidence, and having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award entered by Deputy Commissioner Garner.
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The parties at the hearing submitted a Pre-Trial Agreement which is incorporated by reference and include, but are not limited to, the following stipulations:
a. The employee is Dennis Joe Ford.
b. The employer is Southern Elevator Company.
c. The carrier at risk is AIG Claims.
 d. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. The employer and the employee relationship existed between the employer and employee on or about December 6, 1996, the date of the alleged compensable injury.
3. Medical records were stipulated into evidence.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was injured in an automobile accident on December 6, 1996, while traveling from his home in Greensboro, North Carolina, to Durham, North Carolina.
2. An employee-employer relationship existed between plaintiff and defendant-employer on the date of injury.
3. On the date of injury, plaintiff lived in or near Greensboro and was employed by defendant-employer as a Mechanics Helper. Plaintiff principally worked out of defendant-employer's Greensboro office.
4. Beginning Monday, December 2, 1996, defendant-employer assigned plaintiff to report to its Durham office to begin working on an elevator job in Butner, North Carolina. The assignment was for one week, December 2, 1996, through December 6, 1996. Plaintiff's work shift was 8:00 a.m. to 4:30 p.m.
5. On December 6, 1996, plaintiff left home in his own vehicle in order to meet an employee at defendant-employer's Durham office and be available for work in Butner at 8:00 a.m.
6. After leaving from home on December 6, 1996, plaintiff was involved in an automobile accident in or near Greensboro at about 6:30 a.m.
7. Plaintiff's job generally required him to work on elevators in different North Carolina cities, although plaintiff primarily worked in the Triad area, near the Greensboro office. On the date of injury, plaintiff was on a special assignment wherein he was assigned to work on an elevator in Butner with an elevator mechanic from the defendant-employer's Durham office.
8. At the time of the work assignment to Butner, plaintiff was reimbursed or paid for his travel expenses in accordance with a union contract with defendant-employer, as discussed below. Plaintiff was allowed to stay in or near Durham and submit hotel and meal expenses for reimbursement, or he could travel back to Greensboro each day and stay at home. Because of the health of a family member, plaintiff choose to travel back to Greensboro rather than stay in a hotel near Durham.
9. Reimbursement by defendant-employer to employees for travel and subsistence was governed on the date of injury by contract called "Local Union No. 80 Travel and Expense Agreement." ("The Union Agreement")
10. The parties agree that The Union Agreement speaks for itself and constituted a binding contract between plaintiff and defendant-employer at the time of the injury.
11. Pursuant to The Union Agreement, employee was reimbursed $.31 per mile for his trip to Durham on Monday, December 2, and $.31 per mile for his projected return from Durham to Greensboro on Friday, December 6.
12. Pursuant to The Union Agreement, plaintiff was entitled to $21.00 per day in subsistence pay for the week he worked at the Butner job.
13. On each day of the week in question, plaintiff chose to keep the subsistence money and drive home to Greensboro in the evening and back to Durham in the morning, rather than stay in Durham.
14. Most of plaintiff's medical bills related to plaintiff's injury on December 6, 1996, have been paid by health insurance obtained through his wife's employer.
15. Based on the greater weight of the evidence, the Commission finds that, at the time of the automobile accident during plaintiff's travel from Greensboro to Durham, plaintiff was in the course and scope of his employment and that the accident arose out of his employment. The greater weight of the evidence establishes that this trip was not the usual travel by plaintiff to and from work and, therefore, the compensability of this claim is not controlled by the "going and coming rule." Rather, the evidence is that the trip to Durham was a special mission wherein plaintiff was temporarily assigned to work out of the Durham office and was permitted to travel daily from and to Greensboro. In the typical circumstance of travel to and from work, the risk of injury does not arise out of the employment but is a general risk of injury to all who travel on the highways, and thereby is not compensable. In the traditional "going and coming" case, the employee has the ability to choose where he lives in relationship to his employment and thereby determines the nature and extent of the travel to and from work. In this case, the assignment to work out of the Durham office was for a short time period, anticipated to last one week, and the need to travel was not determined by plaintiff's personal choice but arose from his employer's decision to reassign plaintiff temporarily to the Durham office. For the limited assignment to the Durham office, plaintiff's travel was akin to travel by a traveling salesman or an employee on a special mission. The Commission thus finds that The Union Agreement, and the reimbursement plan contained therein, is relevant in determining that plaintiff's assignment to work in Durham was outside of his local work area. However, because this agreement does not expressly state when or where the plaintiff is "on duty" while working outside the local work area, the Commission finds that the agreement does not otherwise limit or exempt defendant-employer from the traditional liability for injury while on a special assignment or mission.
16. The greater weight of the evidence is that plaintiff's travel to and from Durham while on the assignment was for the benefit of his employer, was not his normal travel to and from work, and was not a personal deviation from his employment.
17. As a result of the automobile accident on December 6, 1996, plaintiff suffered a T12 fracture, fracture of the left transverse process at L1, a nondisplaced fracture of his left fibula, puncture wounds in the left frontal region of scalp, fracture of his left little finger, and other minor multitraumas.
18. Plaintiff's compression fracture and complaints concerning his lower spine were treated by Dr. Elsner. Surgery was performed on December 6, 1996, for plaintiff's T12 compression fracture. Plaintiff also has spondylosis (arthritis) with sciatica in his lumbar spine which Dr. Elsner opines was exacerbated by the car wreck. On December 31, 1997, Dr. Elsner gave plaintiff permanent restrictions of no lifting of more than 20 pounds at the maximum and no repetitive activities such as bending, lifting, or stooping, which are restrictions for plaintiff's back injury and are in addition to the restrictions placed by Dr. Duda for plaintiff's shoulders.
19. Plaintiff was treated for his shoulder complaints by Dr. Duda. The hospital discharge summary dated December 16, 1996, notes that plaintiff had "shoulder complaints." Radiological studies were performed on December 31, 1996, following complaints that plaintiff had neck pain and was not able to move his right arm. An MRI of the right shoulder revealed degenerative disease together with recent traumatic injury. An MRI of the cervical spine revealed a mild annular bulge at C5-6 without nerve root encroachment, spinal stenosis, or HNP. On or about January 29, 1997, plaintiff had surgery for his right shoulder rotator cuff tear by Dr. Duda. On or about May 30, 1997, plaintiff had surgery for a left shoulder rotator cuff tear by Dr. Duda. On January 13, 1998, Dr. Duda indicated that plaintiff had reached maximum medical improvement for his right and left rotator cuff tears and that plaintiff was not able to work with his arms over his head (i.e., he cannot screw a light bulb into a socket over his head). Plaintiff was given a 20% impairment rating to each arm.
20. As the parties have not submitted medical records since the close of the evidence at the hearing before Deputy Commissioner Garner, the Commission is unable to determine whether plaintiff has reached maximum medical improvement for all of his injuries, whether he has returned to work, or whether he would have a greater recovery by electing to be compensated for his disability ratings.
21. During the 52 week period prior to December 6, 1996, plaintiff earned $24,593. Plaintiff, however, was laid off from work from January 26, 1996, through March 17, 1996, due to a lack of work. The Commission, therefore, finds that plaintiff earned $24,593.00 over a period of 44 weeks and 5 days, for an average weekly wage of $550.01 and a compensation rate of $366.67 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was injured in the course and scope of his employment on December 6, 1996. G.S. § 97-2(6). Plaintiff's claim is not precluded by the "going and coming" rule; rather his injury was the result of an accident fairly traceable to plaintiff's employment. See Kiger v.Bahnson Service Co., 260 N.C. 760, 133 S.E.2d 702 (1963).
2. Plaintiff is entitled to total disability benefits from December 7, 1996, and continuing until plaintiff returns to work or until further order of the Commission, at the rate of $366.67 per week, subject to plaintiff's right to elect benefits under G.S. § 97-31. G.S. §97-29, § 97-31.
3. Defendants are obligated to pay for plaintiff's reasonable medical expenses. G.S. § 97-2(19), § 97-25. There is substantial risk that plaintiff will require future medical treatment for his compensable injuries. G.S. § 97-25.1.
4. Plaintiff's counsel is entitled to a reasonable fee of 25% of plaintiff's award.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff total disability benefits at the weekly rate of $366.67 for the period from December 7, 1996, and continuing until plaintiff returns to work or until further order of the Commission, but subject to plaintiff's right to elect benefits under G.S. § 97-31, and subject to the attorney fee awarded herein. Defendant shall pay any accrued amount in a lump sum, subject to the attorney fee award.
2. Of the compensation awarded to plaintiff pursuant to paragraph one of this Award, defendant shall deduct 25% of the accrued, lump sum payment and pay the 25% directly to plaintiff's counsel; for ongoing weekly benefits, defendants shall pay every fourth check directly to plaintiff's counsel.
3. Defendants shall pay plaintiff's reasonable medical expenses when the bills have been submitted to and approved pursuant to Commission procedure.
4. Defendants shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER