***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman with minor modifications.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The employer employs greater than three full time employees and is therefore subject to the Act.
2. An employment relationship existed between the employee-plaintiff and employer-defendant, at the time of the employee-plaintiff's injury.
3. The employer-defendant, pursuant the Act, is a qualified self-insured employer.
4. At the time of his injury, the employee-plaintiff average weekly wage was $532.00.
5. The employee-plaintiff was injured on November 27, 2002.
6. The employee-plaintiff was out of work from November 27, 2002 until present.
In addition, the parties stipulated into evidence the following:
1. Packet of medical records, reports and statements.
2. Packet of Industrial Commission forms.
The Pre-Trial Agreement dated February 10, 2004, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 52 years old and had completed the eighth grade. The plaintiff was employed by defendant for more than sixteen years. The plaintiff worked in multiple positions at Waffle House restaurants, including as a grill operator, master grill operator, shift leader and unit manager. In November 2002, he was the unit manager of the Waffle House in Monroe. His job duties involved overseeing the operation of the restaurant, hiring, firing and managing the employees, distributing their paychecks, and making sure that the restaurant was clean and the customers were satisfied. Although he was the manager, he would have to wash dishes, clean the bathrooms, wait on tables and do whatever needed to be done to keep the restaurant operating properly. He was paid a set salary and did not have specific working hours.
2. The Waffle House employees in plaintiff's division were paid on Thursday. The normal practice was that the division manager would pick up the paychecks at the post office on Tuesday and then would distribute them to the district managers, who would go to the restaurants in their district to give that store's checks to the unit manager. The unit manager would then give them to the employees on Thursday. There were times that the district manager had to work at one of the restaurants on the day that the checks would normally be taken to the unit managers. On those occasions, the unit managers in that district would have to drive to the store where the district manager was working in order to pick up the checks. This occurred every month or two.
3. The unit managers were not paid for their mileage for any of the driving they had to do associated with work. Not only did they have to drive periodically to pick up the payroll checks, they also had to drive to attend monthly managers' meeting and to get food when their restaurants got low on supplies.
4. Wednesday, November 27, 2002 was the day before Thanksgiving, a holiday when the banks were closed. Plaintiff arrived at his restaurant at approximately 5:00 that morning and began working. During the morning, his employees indicated that they had heard that employees at other units were getting paid that day. Since the employees would not be able to deposit their pay checks on Thursday when they would ordinarily be paid and since he wanted them to have a good Thanksgiving, plaintiff called the division manager, John Bernet, and asked if he could pick up the payroll checks that day. The division manager was not working that day. Mr. Bernet advised that he had a meeting to attend but that, if plaintiff would meet him at the Waffle House in Rock Hill, South Carolina, he would give plaintiff the checks.
5. Plaintiff told his employees that he would travel to get the checks, so at least six of the first shift employees decided to wait at the restaurant until he returned. The plaintiff's wife came to the restaurant because she wanted to ride with him, and they left in his vehicle to go to Rock Hill sometime between 2:30 and 3:00 that afternoon. It should have been a forty-five-minute drive. While on the way, plaintiff called Mr. Bernet on his cellular telephone to confirm the fact that he was on his way to pick up the payroll checks. However, while en route, his vehicle was involved in a head-on collision, which left him seriously injured.
6. Due to his injuries, plaintiff has had no memory of the collision. The last thing he remembers is leaving his restaurant. The ambulance report noted that plaintiff was found in the floorboard of his vehicle with a right chest contusion, fractures at both knees, and facial and head trauma. He was transported to Carolinas Medical Center where he was evaluated by the trauma service. His primary injuries were diagnosed as an open, comminuted right distal femur fracture, a comminuted left patella fracture, fractures of ribs 3 through 7 on the right, fractures of ribs 2 through 5 on left, a liver contusion and facial lacerations. He also lost some of his teeth.
7. Dr. Cohen, an orthopedic surgeon, performed surgery that night to reduce the femur fracture and to repair the associated wound above the right knee. However, there was so much soft tissue damage to the left knee that he could not operate on it to address the patella fracture.
8. Plaintiff remained under the care of the trauma service until December when Dr. Sims, another orthopedic surgeon, assumed his care. On December 17, 2002 Dr. Sims operated on the left knee to repair the patella fracture. Since plaintiff was unable to bear weight and could not take care of himself, and since his wife had also been injured in the accident, he was transferred on December 19, 2002 from the hospital to Huntersville Oaks, a rehabilitation facility. Dr. Sims followed his recovery from his fractures. Plaintiff was discharged to go home on February 3, 2003 with home health services, although it did not appear that Dr. Sims allowed him to begin bearing weight on his legs until February 10, 2003.
9. No office notes from Dr. Sims were in evidence after the February 10, 2003 appointment. The evidentiary record did not disclose whether the doctor continued to treat plaintiff after that date. There was a work status form dated June 16, 2003 in evidence that allowed plaintiff to return to work on June 17, but the evidentiary record did not include supporting documentation showing the basis of the work release. In fact, it was not clear that Dr. Sims saw plaintiff at that time.
10. In any event, plaintiff took the work release to his employer. He subsequently called to find out about his work situation for at least two months before deciding that they were not going to offer him a job. Consequently, he then began looking for other employment. He worked a few hours for Country Café and Grill but found that he could not make the movements necessary in order to cook and handle the food due to his injuries. It was also painful for him to stand for long periods of time. Consequently, he did not continue working there. Shortly before the hearing, he found a part time job as a cook at Bobbie's Family Restaurant. He was earning $98.00 per week in that position. His average weekly wage with defendant-employer had been $532.00.
11. Defendants have denied this claim on the basis that the accident on November 27, 2002 did not arise out of and in the course of plaintiff's employment. However, it was one of plaintiff's responsibilities to "administer associate compensate." It was not uncommon for him to drive to another unit to pick up the payroll checks for his employees. His actions on November 27, 2002 were for the benefit of his employees, would contribute substantially to good employee morale, and were therefore good for the company. Contrary to the testimony of Mr. Bernet, plaintiff was not driving to Rock Hill just to get his own paycheck. His first shift employees were waiting at the restaurant because he had told them that he was going to get their paychecks. In fact, it would have been very inefficient for Mr. Bernet to just give plaintiff the one check when plaintiff would have had to have gotten the rest of them at some time by the next day in any event. Therefore, the Full Commission finds that Mr. Bernet's testimony that plaintiff was only coming for his own check is not accepted as credible. Furthermore, Mr. Bernet's testimony that the unit managers did not have to travel to get paychecks is also not accepted as factual.
12. Although plaintiff was not compensated for his mileage, his job with defendant-employer did involve occasional travel. On November 27, 2002 he was traveling to another Waffle House restaurant to meet his division manager. The plaintiff was not on a personal errand but was driving there to get payroll checks for the employees at his restaurant, a work-related reason. While traveling on a direct route to the Rock Hill restaurant, the plaintiff was involved in a motor vehicle collision. The motor vehicle accident was an unusual occurrence that interrupted his regular work routine. The competent evidence in the record establishes that plaintiff's accident arose out of and occurred during the course of his employment with defendant-employer.
13. As a result of the motor vehicle accident, plaintiff sustained multiple serious injuries, which caused him to require hospitalization, surgeries and rehabilitative care. He was unable to work in any capacity due to the injury until June 17, 2003. As of that date, his condition had improved sufficiently so that he could begin to look for work, but he had residual limitations due to pain and weakness from his injuries. Defendant-employer did not offer him suitable work after that time. Plaintiff made a reasonable job search and had difficulty finding suitable work, which would be expected considering his limited education, his residual limitations and the fact that he had done restaurant work for most of his adult life.
14. Consequently, until plaintiff began working for Bobbie's Family Restaurant, he remained unable to work and earn wages as a result of his accident. He was then only able to earn $98.00 per week, which was $434.00 less than his former average weekly wage with defendant-employer.
15. The evidence did not indicate that plaintiff had reached maximum medical improvement at any time prior to the date of hearing. Consequently, no findings are made regarding the extent of any permanent partial disability he may sustain as a result of the accident.
16. Plaintiff apparently lost some teeth as a result of the accident. However, when he was evaluated by the hospital's department of dentistry on December 16, 2002, Dr. Hodges found evidence of long-standing periodontal disease and decay, and expected that multiple teeth would have to be extracted due to those conditions. To the extent that plaintiff required those teeth to be extracted, the loss of those teeth were not related to the accident.
17. In view of the legal issues raised by Mr. Bernet's testimony there were reasonable grounds to support defendants' defense of this claim.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following:
 CONCLUSIONS OF LAW
1. On November 27, 2002 plaintiff was acting in the course of his employment with defendant-employer as he was traveling to Rock Hill. He was not on a personal mission but rather was performing one of the functions of his job. Consequently, he sustained an injury by accident arising out of and in the course of his employment with defendant-employer on that date. N.C. Gen. Stat.§ 97-2(6); Kiger v.Bahnson Service Co., 260 N.C. 760 (1963).
2. Plaintiff is entitled to compensation for temporary total disability at the rate of $354.68 per week from November 28, 2002 until he began working for Bobbie's Family Restaurant. N.C. Gen. Stat.§ 97-29.
3. Plaintiff is entitled to compensation for temporary partial disability at the rate of $289.34 per week from the date he began working at Bobbie's Family Restaurant until the date of hearing on February 10, 2004. He is then entitled to receive continuing compensation at the rate of two-thirds of the difference between his former average weekly wage of $532.00 and the weekly wages he is able to earn, but subject to the 300-week statutory maximum. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§97-2(19); 97-25.
5. Plaintiff is not entitled to have attorney's fees assessed against defendants in that there were grounds to support their defense of the claim. N.C. Gen. Stat.§ 97-88.1.
6. Counsel for plaintiff is entitled to attorney fees, in addition to those provided for in Award Paragraph 4, along with expenses to be paid by defendant for his representation of plaintiff before the Full Commission. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay compensation to plaintiff for temporary total disability at the rate of $354.68 per week from November 28, 2002 until he started working for Bobbie's Family Restaurant. This compensation accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendant shall pay compensation to plaintiff for temporary partial disability at the rate of $289.34 per week from the date he started working for Bobbie's Family Restaurant until February 10, 2004 when the case was heard. Defendants shall then pay continuing compensation at the rate of two-thirds of the difference between his former average weekly wage of $532.00 and the weekly wages he is able to earn thereafter, but subject to the 300-hundred-week statutory maximum. That portion of this compensation which has accrued shall be paid in a lump sum. This award is subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
4. An attorney's fee in the amount of twenty-five percent of the compensation awarded is approved for plaintiff's counsel. Defendants shall pay him a lump sum from the accrued compensation and shall thereafter pay him every fourth check.
5. Defendant shall pay an additional attorney fee to counsel for plaintiff, along with expenses for his representation of plaintiff before the Full Commission. The amount due is to be determined pursuant to the Order section herein.
6. Defendants shall pay the costs.
 *********** ORDER
Counsel for plaintiff is allowed twenty (20) days from receipt of this Opinion and Award within which to submit to the Full Commission and serve on defendant affidavits and other necessary documents upon which appropriate fees and costs can be set for his representation of plaintiff before the Full Commission. Defendant shall then have ten (10) days to respond appropriately.
This the ___ day of November, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
PTY:db