***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gheen and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gheen, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS *Page 2 
1. It is stipulated that all parties are properly before the Industrial Commission and that the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. It is stipulated that all parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. It is stipulated that the parties were subject to the Workers' Compensation Act at the time of the alleged injury.
4. It is stipulated that an employer/employee relationship existed between the parties at the time of the alleged injury.
5. The employer in this case is the NCDOC and the claims administrator is Key Risk Management.
6. Plaintiff sustained a compensable injury on or about January 9, 1995.
7. Plaintiff average weekly wage is $437.33, which yields a compensation rate of $291.57.
8. The nature of the Plaintiff injuries is an admittedly compensable left knee injury and an alleged right knee injury as a result of the employee favoring his left leg.
 ***********
The parties identified the following in the Pre-Trial Agreement as:
 ISSUES
1. Whether Plaintiff is entitled to additional medical treatment for his right leg as a result of overcompensating due to an admittedly compensable left leg injury.
2. Whether Plaintiff is entitled to additional temporary total disability benefits or permanent partial disability due to his compensable right knee injury. *Page 3 
3. Whether the Plaintiff has sustained a change of condition in regard to his left knee injury.
4. Whether Plaintiff right knee injury is related to his compensable left leg injury.
5. Plaintiff, in his Contentions, presents the issue of whether he is entitled to future medical treatment for his left knee.
6. Defendant, North Carolina Department of Corrections (hereinafter "NCDOC") in the proposed Opinion and Award, presents the issue of whether N.C. Gen. Stat. § 97-47 precludes Plaintiff'ss claim for change of condition.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff started working for the NCDOC in May of 1993 as a correctional officer. He was promoted to sergeant in 1998.
2. Plaintiff suffered an admittedly compensable injury by accident to his left knee on January 9, 1995. On that date a fight between inmates erupted. While trying to subdue two inmates involved in the affray, the three men fell to the floor where Plaintiff's knees slammed into the corner of a metal cell door.
3. Dr. David Fedder (hereinafter "Fedder") at Pinehurst Surgical Clinic provided Plaintiff initial conservative treatment. Dr. Fedder's medical records establish that Plaintiff initially injured both knees, the right initially being more symptomatic than the left. Ultimately, the injury of consequence was the left knee. *Page 4 
4. As a result of the fall, Plaintiff sustained a lateral meniscus tear of the left knee and Dr. Fedder performed a left knee arthroscopy and partial lateral meniscectomy to repair a lateral meniscus tear and a partial ACL tear in Plaintiff left knee.
5. Dr. Fedder released the employee to limited duty work on May 1, 1995.
6. The employee returned to work for the NCDOC. He worked as a sergeant performing his regular duties. The NCDOC did not accommodate all of his physical restrictions.
7. On June 19, 1995, Dr. Fedder released Plaintiff from his care with a five percent permanent partial disability rating to the left knee.
8. Plaintiff subsequently returned to Dr. Fedder with continued symptoms and a steroid injection was administered on October 31, 1995. Plaintiff continued to treat conservatively with Dr. Fedder. On May 8, 1997, Dr. Fedder recommended a second opinion referral and a repeat arthroscopic evaluation as the only treatment option.
9. Dr. Lyman Smith (hereinafter "Dr. Smith") at Raleigh Orthopedic Clinic performed an independent medical examination of Plaintiff left knee on August 5, 1997. Dr. Smith found that Plaintiff had fraying of the posterior lateral fibers in the ACL and a small tear of the lateral meniscus.
10. Dr. Smith performed arthroscopic surgery on September 23, 1997 with a partial lateral meniscectomy and abrasion chondroplasty in the femoral trochlea. Post surgery, Dr. Smith referred Plaintiff for a course of physical therapy.
11. Plaintiff returned to Dr. Smith for treatment on May 26, 1998. Plaintiff had arthritis in his femoral trochlea. Dr. Smith opined that Plaintiff would experience progressive difficulties with his left knee over time. *Page 5 
12. Dr. Smith released Plaintiff to return to heavy work as tolerated on March 3, 1998 and assigned a fifteen percent permanent partial disability rating.
13. On August 21, 1998, Plaintiff's physician imposed significant physical limitations of no strenuous physical activity and walking as tolerated.
14. The NCDOC paid the permanent partial disability benefits by lump sum in September, 1998. The NCDOC contends that the final payment of benefits was September 30, 1998. No Form 28B, Report of Employer or Carrier/Administrator of Compensation and Medical Compensation Paid and Notice of Right to Additional Medical Compensation, was introduced into evidence.
15. Plaintiff sought additional medical treatment on November 10, 1998. Plaintiff physician ordered orthotics to help reduce patellofemoral pain.
16. Dr. Smith treated Plaintiff again on July 13, 2000. Plaintiff had complaints of worsening pain in his left knee after an incident at work aggravated it. Plaintiff aggravated the knee when he had to restrain a prisoner, which required him to kneel on his knee for an extended duration. Plaintiff was experiencing popping and clicking in his knee with episodic incidents of swelling. The left knee, consistent with Dr. Smith's opinion in 1998, had become progressively worse and the incident in 2000 accelerated the deterioration.
17. Plaintiff returned to Dr. Smith on October 6, 2004. Dr. Smith assigned permanent work restrictions of no squatting, climbing or running. Plaintiff's employment at the NCDOC continued to require that he climb stairs.
18. By December 8, 2004, Dr. Smith recommended that Plaintiff avoid prolonged standing for greater than forty-five to sixty minutes and noted that Plaintiff's job did not have foot rest available that prevented dangling of his legs. *Page 6 
19. Plaintiff's job required him to climb stairs, resulting in swelling and inflammation in the knees. These physical requirements of employment were outside the work restrictions assigned by Dr. Smith.
20. On September 15, 2006 Plaintiff returned to Dr. Smith with continued left knee problems and Dr. Smith prescribed additional physical therapy.
21. Dr. Smith noted on October 24, 2006 that Plaintiff's right knee was painful. His right knee symptoms had slowly increased over time to the point where it was almost as bad as the left knee. The right knee was painful when climbing stairs, kneeling or squatting.
22. Dr. Smith opines that Plaintiff's injury to the left knee progressively required that he put an abnormal amount of stress on his right knee. Dr. Smith further noted that Plaintiff appeared to have patellar femoral issues in the right knee, similar to the left knee.
23. Dr. Smith noted on March 20, 2007 that Plaintiff's right and left knees were bothering him. Bionic care and Hyalgan injections had been attempted on the left knee at that time but Plaintiff continued to experience difficulty with his knees.
24. Dr. Smith performed a partial lateral meniscectomy and a chondroplasty of the lateral femoral trochlea in Plaintiff's left knee on June 25, 2007.
25. Plaintiff returned post-surgery to Dr. Smith on April 18, 2008. Dr. Smith noted that the Plaintiff biggest problem at that point was his right knee. Dr. Smith's opinion is convincing that Plaintiff experiences right knee patellar femoral pain, a similar process as effecting his left knee.
26. On April 18, 2008 Dr. Smith declared the Plaintiff at maximum medical improvement as to his left knee. Dr. Smith assigned an additional five percent permanent partial disability rating because of the continued arthritis and the additional meniscectomy. Dr. Smith *Page 7 
testified that he would consider diagnostic treatment for Plaintiff's right knee if he did not respond to conservative treatment.
27. Dr. Smith holds two opinions: (a) Plaintiff is at a substantial risk of needing future medical treatment for both his right and left knees; (b) specifically including the probability of a left total knee replacement in the future.
28. Dr. Smith's opinion in context of all of the evidence that Plaintiff's right knee pain is directly related to the employee's compensable left knee condition is persuasive and established as a fact.
29. Plaintiff is no longer employed with the NCDOC and that he has not worked there since January of 2006. Plaintiff has heart conditions and depression that prevent him from continuing to work for NCDOC and he currently receives long-term disability benefits from the State of North Carolina.
30. Plaintiff's counsel has provided valuable legal services, including but not limited to the preparation and trial of this workers' compensation action. A reasonable attorney fee is 25% of the disability benefits awarded.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In accordance with N.C. Gen. Stat. § 97-25 Plaintiff has proven by the greater weight of the evidence that he is entitled to receive any and all treatment to his left knee that is related to the compensable injury and is "reasonably necessary to effect a cure, provide relief or lessen the period of disability." *Page 8 
2. Plaintiff has proven by the greater weight of the evidence that his right knee condition is a result of his compensating for the injury to his left knee. Therefore, Plaintiff right knee condition is compensable as it is causally related to his January 9, 1995 compensable left knee injury, Henry v. A.C. Lawrence Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950), as it has a reasonable relationship to the injury Plaintiff experienced while working for NCDOC.Kiger v. Bahnson Serv. Co., 260 N.C. 760, 762, 133 S.E.2d 702, 704.
3. Plaintiff has proven by the greater weight of the evidence that there is a substantial likelihood that his right and left knees will require treatment into the future, including but not limited to a full left knee replacement. N.C. Gen. Stat. § 97-25.1; Adams v. FritCar, Inc. 185, N.C. App. 714, 649 S.E.2d 651 (2007).
4. NCDOC's contention that Plaintiff is barred from further benefits two years following the alleged last payment of benefits on September 30, 1998 is not well taken. N.C. Gen. Stat. § 97-47.
5. Plaintiff is legally entitled to compensation for the five percent additional permanent partial rating his left knee as assigned by Dr. Smith on April 18, 2008. N.C. Gen. Stat. § 97-31.
6. Plaintiff counsel has provided valuable legal services, including but not limited to the preparation and trial of this workers' compensation action. A reasonable attorney fee under the facts and circumstance of this case is 25% of the disability benefits awarded. N.C. Gen. Stat. § 97-90.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following: *Page 9 
 AWARD
1. The NCDOC shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of his compensable left and right knee injuries, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen Plaintiff period of disability, when medical bills have been submitted according to established Industrial Commission procedures. This shall include future medical compensation as provided by N.C. Gen. Stat. § 97-25.1.
2. The NCDOC shall pay Plaintiff, subject to the attorney fee provided for hereinafter, an additional five percent permanent partial disability rating as assigned by Dr. Smith on April 18, 2008.
3. Plaintiff shall pay a reasonable attorney fee of twenty-five percent of the disability benefits awarded. The attorney fee shall be paid by the NCDOC withholding the amount from the disability benefits awarded to Plaintiff and paying the sum directly to Plaintiff's counsel.
4. The NCDOC shall pay the costs.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING: *Page 10 
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER